Ms. Bjorklund, are you with us? And Mr. Wozniak? Yes, I am. 20-2365 from the District of Minnesota, John Nesse et al. v. Green Nature-Cycle. Ms. Bjorklund. Thank you, Your Honor. May it please the Court and Council, good morning, my name is Shannon Bjorklund and I represent Appellant Green Nature-Cycle, LLC. The question before this Court is whether Green Nature-Cycle, a small landscaping business, should be forced to pay a union fund fringe benefits for non-union workers who already received the benefits directly at the direction of the Minnesota Department of Transportation following an audit that the union was aware of and participated in. We believe the law, the contract, and common sense all dictate no, that these duplicative payments are not required. I want to focus attention on what makes this case really unique from other cases and other opinions in this area, which is section 16.4 of the agreement, which is on addendum page 40, and it says, and I quote, there shall be no requirement that employees sent to work outside the scope of this agreement be paid fringes, nor shall the employer be required to duplicate fringe contributions. And it is this non-duplication provision coupled with the MnDOT audit and its requirement to pay the individual workers directly that should lead this Court to overrule and reverse the district court's decision otherwise. As this Court is aware, a collective bargaining agreement rises and falls on the terms of its specific agreement. And we're not aware of any opinion cited in Appley's brief that dealt with a non-duplication clause or one that dealt with a government entity requiring a contractor to make payments directly to specific individuals. The union, as noted in our briefs, was aware of the audit at the time it occurred, submitted information for six union employees, and the audit determination addressed 26 union employees and one fringe fund. Thus, the scope is not a matter of one or two employees. It is a matter of tenfold of the damages. To be clear, this is a very, very narrow issue. We are not asking this Court to rule that any time a fringe payment is made to an individual, it doesn't need to be made to a union fund. We are asking this Court to rule that on these in this very specific collective bargaining agreement, Green Nature Cycle has satisfied its obligation. Counsel, what does the record show about the payments that were made by the general contractor under the audit? I mean, what's actually been paid and paid by whom? So, Your Honor, I would point you to page 19 of our opening brief, which has kind of a list of different citations, and I'll summarize the evidence as well. So, after MnDOT did an audit, it sent a letter to Green Nature Cycle identifying the amount that needed to be paid to the different individuals and the fringe fund. At the same time, around the same time, MnDOT sent a against the subcontractor, Green Nature Cycle, and giving the general contractor the opportunity to make the payment. Now, as we've stated a few times, the general contractor never paid Green Nature Cycle for its work, but did opt to satisfy the audit requirement by paying the funds directly to MnDOT, which then issued checks to the fund and the individuals. And if you you look at our page 19, we have a number of bullet points that identify... So, your position is, how is it double payment by your client when it was the general contractor that made the payment? So, two reasons. Number one, it's double payment because it's seeking fringe benefit payment for the very same hour worked. So, it's asking that for one hour of one employee's time, the fringe benefit was already paid to that employee and now that same fringe benefit for that same hour be paid to the fund. So, that's the way it's duplicated. And again, I think... So, it's not a matter of you're having to pay twice, it's just you're trying to prevent the or to say that the fund shouldn't get paid twice. So, it is indirect, but I do believe it is our client essentially paying twice. Both the MnDOT auditor and... How was it your client paying twice when it was the general contractor that paid it? Because the general contractor owed money to our client, right? So, to give a hypothetical, if my neighbor owed me $20 and I owed my babysitter $10 and my neighbor paid the babysitter $10, it's effectively on my behalf. And the neighbor still owes me additional money, but that's kind of how the payment flowed. And I'll note that actually plaintiff's 30B6 witness noted that they consider amounts paid by the general contractor to be accounted for as if paid by the subcontractor. And that's actually on page 213 of the appendix. That was the 30B6 testimony. So, according to both plaintiff's 30B6 witness and the MnDOT auditor, and there's written documentation from the auditor on this point as well, the payments from the general contractor satisfy the obligation for a green nature cycle. This is one of the areas where we think the district court erred in the greatest degree and that it ignored the idea that this payment was made on behalf of green nature cycle, even if it was not paid directly. Counselor, help me with something else. And that's the relationship between the trust funds, which are the parties here and the unions, in terms of to whom the MnDOT audit required payment and what's the interrelationship between the trust and the union and the obligation of the subcontractor like your client? Thank you, your honor. So, the union is representing the employees and has communications with the subcontractor, my client, green nature cycle. The fund is a separate kind of legal entity that holds the actual money for the fringe benefit. It's an ERISA type entity, but there is a relationship between the two. And I think the overlap is illustrated in the series of communications between Mike and the Minnesota department of transportation auditor. The union actually complained to the auditor that certain payments had not been made, wages, fringe benefits, et cetera, had not been made and MnDOT launched the investigation asking for information from the union. When it came time to pay the union fund, the auditor reached out to that same union representative looking for social security numbers. So, while plaintiff now tries to draw a very strict demarcation between the two and they are separate legal entities, there is commonality in kind of how they were operating and for the purposes of the audit, they were communicating kind of together and not individually. So, how did the general contractor's audit payments satisfy the agreements requirement that you pay these benefits to the fund? So, I think it breaks down to a couple of different provisions. So, first of all, as we argued and as we contend, the requirement to pay a certain amount of fringe benefit goes to the fund for any union employees, but is silent as to where it goes for any nonunion employees. Minnesota department of transportation instructed and actually issued the checks itself to the individuals for the fringe benefit funds. Now, if we didn't have a non-duplication clause in this collective bargaining agreement, I think it would be a closer question. But, given the non-duplication provision, the fact that the fringe benefits for this specific hour were already paid directly to the individual eliminates an obligation to pay duplicative benefits for that same hour of work to the union fund. How did the district court interpret the clause that you referenced in the agreement about non-duplicative payments? So, your honor, it's not entirely clear to me. I think the court primarily relied on the idea that the money flowed from the contractor, the general contractor, instead of, you know, general contractor to my client to MnDOT. And so, said there's not a duplication issue because the kind of my read on the district court's interpretation is that if the check is coming from a different individual, it doesn't implicate the duplication clause. A couple other points I'd just like to highlight is that, you know, this is, the collective bargaining agreement should also be interpreted in light of industry experience and how contracts and how businesses operate in this space. The Minnesota auditor has handled almost 400 audits and has done many, maybe, I think at least 10% that were in the landscaping business and testified that she routinely directs that fringe payments be made to individuals when they are non-union members and to the union fringe fund when they are union members. And the union here is really seeking an unwarranted bonus, sort of a windfall, because it was not a union for these individuals. It didn't pay them anything from this pension fund. They should and are entitled to be compensated for this amount. And essentially, the union is just trying to either take it away from the individuals or require my client to pay it twice or to pay a second time for the hours that were already submitted to the individuals. All right, unless there are any further questions, I would just reserve my remaining time for rebuttal. Thank you, Ms. Porkland. Mr. Wasmick. Thank you, your honor. May it please the court. My name is Carl Wasmick. I represent the appellees, John Nessie et al, in this case. Our counsel's first argument that she went through was the allegation that somehow duplicate fringe benefit contributions were made. The district court rejected that and did so properly for a number of reasons. ERISA section 515 requires two things. It requires payments, all payments, to be made that are required by a CBA. That's the first thing. The second thing that's required is that those payments be made in accordance with the terms of the CBA. So, counsel, in that regard, were the payments that MDOT made in violation of that provision and are they a necessary party to this suit? I don't believe that MDOT made any direct payments to the funds. That's not the record. Some general contractors made some payments to the funds that were directed by MDOT. Well, I thought counsel told us that the contractors paid MDOT and that MDOT distributed them to the employees. Well, whether MDOT distributed them to the employees, I don't believe it was monies that came from MDOT. It was monies that the general contractors acknowledged that they owed Green Nature Cycle, which instead of paying Green Nature Cycle, they paid to the behest of MDOT. So, those payments were not owed to the fund? Well, those payments were owed to the fund, but they weren't owed because of the prevailing wage audit. They were owed because the CBA required those payments to be made. The district court found that the payments were made according to the minimum standards of Minnesota law. The district court found that that was a separate question than the question in the case before him, which was brought under ERISA section 515, which requires an employer to make all payments required by a CBA in the manner set forth in the terms of that CBA. So, counsel, if you prevail and we affirm and Green Nature Cycle pays these monies to the fund, what will the fund do with them? If they distribute them to the employees, aren't the employees going to get paid twice? And if you don't distribute them, isn't that a windfall? Well, as set forth in the record, the funds do not keep track of whether or not someone is a union member or not a union member. For purposes of federal law, they're not able to do that and it would be a violation if they did make some distinction between union and non-union members. In the administration of the funds, when monies come in for a participant, an account is set up in their name. Those monies are then earmarked, or I shouldn't say those monies, the monies go into a common fund, but an account is set up for each of those individuals. Will there ever be a drawdown of that account since they've already been paid? I'm sorry, I didn't catch the question. Will there be a drawdown of that account since they've already been paid and if not, isn't the fund receiving a windfall? Well, in this case, if the payment was made directly to the employee and not to the fund, the employee would be receiving a windfall, but the fund would not because those funds never were received by the fund. They would still have an obligation to credit that participant with those contributions, whether or not they receive that money or not, at least as to the pension fund. Which was it? Did the general contractor pay to the funds or did it pay to the employees directly? There were two classes of employees at issue here. Some of Green Nature Cycle's employees were union members and those union members' contributions were made directly to the funds and for those members, all of their contributions were credited and those aren't monies that are being sought in this case. As to the funds, but monies were received by the individual employees. Now, under applicable law, the funds, the common funds, never received those monies at all. And the problem is... Counsel, your argument is you're entitled to receive that from the appellant because of the for these non-union employees into your fund. That's correct. But their reply is those same employees that you're trying to require them to pay into your fund have already been compensated for those fringe benefits directly so that paying into your fund is unnecessary. What's your response? Our response is twofold. It's not only unnecessary, it's expressly prohibited by your agreement. Well, it's not expressly prohibited by the agreement. This situation has arisen in other courts, in other circuit courts of appeal, and those courts have not found payments under these circumstances to be duplicative. Now, an individual receiving a check for money is not the same thing as them receiving an entitlement for a pension. Those are two different things. Now, in terms of the funds, ERISA 515 is clear. It requires two things. It requires payment to be made pursuant to the CBA. So if you want to say that... If you want to assume, for instance, that payment was made, that that was satisfied under the CBA, sort of a no harm, no foul situation, the second directive from ERISA 515 is those payments must be made in accordance with the terms of the CBA. The terms of the CBA forbid employers from paying employees directly. They require that any payments be made directly to the fund, specifically to the funds administrator, specifically on one check, whether people are union or not union. The manner in which these payments were made, there can be no argument that the contract was satisfied. There can also be no argument that ERISA 515 was satisfied because there can be no reasonable argument that the payments were made in the manner that was directed by the CBA. So what benefit is there to green nature by the inclusion of the language in the agreement that they not be required to duplicate fringe contributions? Typically, my understanding is that typically, oftentimes, non-duplication provisions of an agreement, which are standard, by the way, in which I would be very surprised if those contract terms weren't included in other contracts that have been adjudicated by the other courts. They've never been made an issue such that the courts talked about them, but I would be very surprised if those clauses didn't exist. But oftentimes, you've got union members who are sometimes to make contributions in a local jurisdiction where they're traveling to, as well as to their home jurisdiction, and it's that situation where I've seen that come up. I've never seen this issue come up in terms of how payments are supposed to be made to the CBA because that's clear. The CBA at issue here says not only do you have to make payments in a specified amount, but you have to make them to the fund's administrator, Zenith Solutions, on one check so that it's not an administrative nightmare in trying to track down benefits that should be paid, in trying to determine whether or not payments have been made, and determining whether or not the correct amount of payments have been made. The purpose for ERISA Section 515, a primary purpose, is to reduce the administrative costs that are associated with the administration of these plans. And if it were the case that an employer could disregard the clear CBA provisions about how and where the payments are to be made, that would entirely frustrate the purpose of ERISA 515, which is to make it as easy as possible for these funds to receive and credit contributions and so forth. And so when you're talking about the duplication issue, it can't reasonably be duplicated under the terms of this contract because there can be no disagreement that no payments were made to the funds as required by the CBA. In terms of the relationship between the union and the funds, I don't believe that there was any record evidence of the union and the funds operating together for any material purposes that would be at issue in this case. Council, what is the Minnesota Laborers' Fringe Fund? Well, there are a group of fringe benefit funds. There's a pension fund, there's a health and welfare fund, there's a vacation fund, so there's a separate group. Typically, just in ordinary word usage, those separate funds will be referred to as a group in common parlance as the Minnesota Laborers' Fringe Benefit Fund. And typically, that's how checks are made payable to the funds administrator. There's the requirement under the CBA that all payments required under the CBA be paid to their administrator on one check, and that one check, the person that the check would be made out to would be the Minnesota Laborers' Fringe Benefit Funds. So, in terms of the duplication issue, the judge in this case found that there was a pretty simple basic requirement that was not met in the case. The employer had a clear responsibility. It had to do two things. The first thing was to make payments. It never did that. It's true that some payments came into the funds from general contractors, but no payments were ever made by Green Nature Cycle. And in terms of the second requirement of the contract, and the second requirement of ERISA 515, which is that payments be made in accordance with the CBA, no payments that are at issue in this case were even received by the funds, let alone in the manner that was required by the CBA. So, unless there are further questions, I yield the remainder of my time. All right, I don't see my colleagues with any additional questions. Thank you, Mr. Wasmick. Ms. Bjorkman? Thank you, Your Honor. I'd like to just provide the court with some additional record evidence that might assist. So, first, to address the question of who actually cut the check, was it MnDOT or was it the general contractor? The general contractor issued checks to individuals and the fund, as specified by MnDOT, forwarded those to MnDOT, who then distributed those checks. So, MnDOT did not sign the checks, but did direct to whom they're made out and so on. And in particular, you can look at appendix page 120. And I'll just quote the Jackie Klein, the MnDOT auditor's testimony, quote, the prime contractors made checks out to each individual, but then forwarded the checks to me for me to process. Counsel, is the general contractor seeking repayment from your client for having paid the benefits? No, Your Honor. And I believe the general contractor still owes my client for additional payments that were never made under the contract. The other point I want to make is with respect to a windfall, if you look at appendix pages 146 to 150, not only does an individual need to have contributions made to a fund, but they need to have a certain minimum number of hours in order to obtain any benefit at all from the fund. And these employees simply didn't have that. So, this really is a the union fund would be receiving a windfall because it's not going to be paying any of these benefits to the individuals because they didn't work for long enough to do that. Next, I wanted to address the concept of duplication. We've been going back and forth on whether a payment from the general contractor duplicates or can be construed as payment from green nature cycle pursuant to the CBA. And I find it sort of curious the difference between the argument that any payment by the general contractor doesn't count with counsel's acknowledgment that they're not seeking an additional payment for the monies that already went to the fund from the general contractor. If those are not duplicative, you would be expecting them to seek an additional payment for them again. Seeing as they are and as their 30b6 witness already admitted that those amounts paid by the general contractor through MnDOT were credited as if green nature cycle had paid them on appendix page 213, I think that we can put to rest sort of the question about whether the indirect circuitous route of payment really makes it non-duplicative. We believe that regardless of the route of the money, it was satisfying the obligation under the collective bargaining agreement. And finally, I'd like to talk about we're getting into kind of a loop of whether something is paid in accordance with the CBA or not. My opposing counsel believes that there's no way and there can be no disagreement that it wasn't paid in accordance. We disagree. We think that the fund received the monies they're entitled to under the collective bargaining agreement. I certainly see no provision in the collective bargaining agreement that forbids a direct payment to an employee. The one check language that counsel was referring to is in section 16.1 of the agreement on addendum page 40 and it says the entire provision, I'm quoting, the fringe benefit contributions to be paid are on one check and submitted to the agent of the funds as designated by the trustees. I don't read that to mean that all non-union members have their fringe benefits paid to the fund. I'm sorry, I see I'm out of time. If there aren't any further questions, I'll be done. I don't see any. Thank you, Ms. Porkland. The court wishes to thank both counsel for the argument you've supplied to the appreciate it and it's been helpful. We will take the case under advisement and render decision in due course. Thank you.